```
                              :
TRACY GARDNER, et al.
                              :
      v.                      :   Civil Action No. DKC 13-1768
                              :
GREG'S MARINE CONSTRUCTION,
INC., et al.                  :
                              :
```

**MEMORANDUM OPINION**

Presently pending and ready for review in this negligence and wrongful death case are motions to dismiss, or in the alternative, for summary judgment filed by Defendants Dominion Cove Point LNG, LP ("Dominion LP"), Dominion Resources, Inc. ("Dominion Inc."), and Dominion Cove Point LNG Company, LLC ("Dominion LLC") as to Counts IV, V, and VI (ECF Nos. 11 & 12); Defendant Weeks Marine, Inc. ("Weeks Marine") as to Counts III, V, and VI (ECF No. 13); and Defendant Greg's Marine Excavation, Inc. ("Greg's Marine Excavation") as to Counts I, II, V, and VI (ECF No. 27). The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motions filed by these Defendants will be granted.

## I.  Background

### A.  Factual Background[1]

On June 18, 2013, Tracy Gardner ("Gardner") brought this action as administrator and personal representative of the estate of Mark Copeland ("Mr. Copeland" or "the decedent"), asserting a violation of the Jones Act, 46 U.S.C. § 30104, against Greg's Marine Construction, Inc. ("Greg's Marine Construction") and Greg's Marine Excavation (Count I); violation of the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 903, against Greg's Marine Construction and Greg's Marine Excavation (Count II); negligence against Weeks Marine (Count III); negligence against Dominion LP, Dominion LLC, and Dominion Inc. (Count IV); and a survival action against all defendants (Count VI).[2]  Robert Wayne Copeland, the decedent's father, brings a wrongful death claim against all Defendants (Count V).

---

[1] The following facts are drawn from the complaint and from documents quoted by, relied upon, incorporated by reference in or otherwise integral to the complaint. *See In re E.Spire Communication, Inc. Sec. Litig.*, 127 F.Supp.2d 734, 737 (D.Md. 2001).

[2] The so-called "survival action" in Count VI is not a separate cause of action and duplicates the claims in Counts I through IV.  Maryland's survival statutes did not create a new cause of action.  *See Trimper v. Porter-Hayden*, 305 Md. 31, 38-39, 501 A.2d 446 (1985), *overruled on other grounds* by Md.Code Ann., Cts. & Jud. Proc. § 3-904(g)(2); *Smith v. Gray Concrete Pipe Co.*, 267 Md. 149, 158-59, 297 A.2d 721 (1972), *overruled on other grounds* by *Owens-Ill., Inc. v. Zenobia*, 325 Md. 420, 601 A.2d 633 (1992); *see also* Md.Code Ann., Est. & Trusts § 7-401(y) ("[A personal representative] may prosecute, defend, or submit

2

Mark Copeland died on October 23, 2010 while performing repair work at the Cove Point Terminal on Chesapeake Bay in Maryland. During the relevant time, Greg's Marine Construction employed Mark Copeland as a laborer. (ECF No. 1 ¶ 13). The complaint alleges that Greg's Marine Excavation and Greg's Marine Construction "owned, operated, managed, directed and controlled a barge, raft or floating platform operating in the navigable waters of the Chesapeake Bay." (*Id.* ¶ 7). The complaint recites that "Dominion Cove Point LNG, LP, Dominion Cove Point LNG Company LLC, and Dominion Resources, Inc. . . . owned and operated Cove Point LNG Terminal, an offshore liquid natural gas shipping terminal, located on the western shore of the Chesapeake Bay in the State of Maryland." (*Id.* ¶ 12).

On October 9, 2003, Dominion Transmission, Inc., an affiliated company of Dominion LP, entered into a Master Service Contract ("MSC 634") with Greg's Marine Construction, Inc. for work to be performed periodically by Greg's Marine Construction at the Cove Point Terminal. (*See* ECF No. 11-2 ¶ 5 & ECF No. 11-

---

to arbitration actions, claims, or proceedings ... for the protection or benefit of the estate, including the commencement of a personal action which the decedent might have commenced or prosecuted ...." (emphasis added)). Courts often use the term "survival action" loosely to refer to any claim brought by a decedent's estate. To be precise, a "survival action" is merely the mechanism by which an estate brings a claim that the decedent could have asserted had he survived. It is not a "claim" in the sense that, for example, one might assert a battery or negligence claim.

3). The MSC 634 provided that Greg's Marine Construction's status was that of an independent contractor, and "neither [Greg's Marine Construction, Inc.] nor any employees of [Greg's Marine Construction, Inc.] are employees of [Dominion Transmission, Inc.]." (ECF No. 11-3, at 22). On October 15, 2009, Greg's Marine Construction submitted a proposal to Dominion LP for "work to be completed on the off-shore pier of the Cove Point Terminal facility pertaining to the removal of old, damaged concrete piling jackets and then the installation of new concrete piling jackets." (ECF No. 11-2 ¶ 8; ECF No. 11-4). This "Final Proposal for Offshore Pile Jackets" provided that "[t]here are a total of eleven (11) 54[inch] concrete piles that have 8' [Concrete Piles] Jackets installed by others that are damaged." (ECF No. 11-4, at 1). The proposal identified eleven damaged piles, including Pile No. 140, on which the decedent performed repair work at the time of his death. On October 21, 2009, Dominion LP issued a purchase order to Greg's Marine Construction for the concrete piling jacket removal work; the order provided that "Master Service Contract 634 10/9/2003 between the same parties is hereby incorporated by reference as if fully set forth herein. MSC 634 shall be the sole source of the terms and conditions of the agreement between these parties and shall supersede and replace any other terms that [Greg's Marine Construction] may submit as part of their proposal unless

4

Dominion provides specific written acceptance of any such terms." (ECF No. 11-5, at 1-2). The proposal, which was executed by Dominion LP and Greg Burkhardt of Greg's Marine Construction, further provided that "Contractors are expected to comply with OSHA regulations. Contractors are responsible for the safety of their employees and associated OSHA compliance." (*Id.* at 2). It further stated that "Contractors are required to comply with all applicable Dominion Transmission safety rules and procedures when performing work on the location." (*Id.*).

On October 23, 2010, Mark Copeland was performing repair work in the navigable waters approximately one mile off-shore from the Dominion LNG Plant located at Cove Point Road in Maryland. (*Id.* ¶ 15). The complaint refers to both Greg's Marine Construction and Greg's Marine Excavation collectively as "Greg's Marine." The complaint alleges that "Mr. Copeland was working in the course and scope of his employment with defendants, Greg's Marine, pursuant to the contracts and subcontracts between defendants, Dominion, Weeks, and Greg's Marine." (*Id.* ¶ 16). Specifically, Mr. Copeland "was utilizing an air hammer to chip concrete from the pilings in order to remove the deteriorated jackets." (*Id.* ¶ 19). He was "seated on the edge of a small seafaring vessel, temporary floating platform and/or dock with a portion of his body in navigable waters of the United States." (*Id.* ¶ 20). At the time of the

incident at issue, Plaintiffs allege that "Greg's Marine" furnished Mr. Copeland with "a fiberglass hard hat and brass commercial diver's helmet, a neoprene wet suit, a safety harness, swimmer's and/or diver's fins and/or boots, a neck dam and collar, an umbilical and/or air hose, a weight belt, a thermal tube, a safety line and/or a communication line." (*Id.* ¶ 22). Mr. Copeland was not a certified commercial diver, but was "performing the tasks and duties that he was instructed to perform by his employer [Greg's Marine Construction]." (*Id.* ¶¶ 17, 25). "Gregory Burkhardt, owner, shareholder, principal, officer and/or agent of defendants, [Greg's Marine Construction and Greg's Marine Excavation], was a certified commercial diver and, at all times relevant hereto, had actual knowledge of the training necessary to perform work as a commercial diver." (*Id.* ¶ 24). "[T]he concrete piling jacket on which Mark Copeland was performing repair work became detached from the piling and pulled Mr. Copeland to the bottom of the Chesapeake Bay, approximately fifty (50) feet below the surface." (*Id.* ¶ 26). Mr. Copeland's coworkers then attempted to rescue him, but "in their attempt to do so, they dislodged Mr. Copeland's air hose and/or safety line." (*Id.* ¶ 27). Mr. Copeland was pronounced dead at approximately 12:57 p.m. on October 23, 2010.

## B.  Procedural Background

Plaintiffs filed a six count complaint on June 18, 2013. Dominion LP moved to dismiss Counts IV, V, and VI, or in the alternative, for summary judgment on July 29, 2013 (ECF No. 11). Plaintiffs opposed the motion on August 15, 2013 (ECF No. 19), and Dominion LP replied on September 3, 2013 (ECF No. 23). Defendants Dominion Inc. and Dominion LLC filed a separate motion to dismiss the same counts, or in the alternative, for summary judgment on July 29, 2013 (ECF No. 12), Plaintiffs opposed on August 15, 2013 (ECF No. 19), and Defendants replied on September 3, 2013 (ECF No. 22).  Weeks Marine moved to dismiss counts III, V, and VI, or in the alternative, for summary judgment on July 30, 2013 (ECF No. 13), Plaintiffs opposed on August 15, 2013 (ECF No. 20), and Defendant replied on September 10, 2013 (ECF No. 27-1).  Greg's Marine Construction answered the complaint on September 10, 2013.  (ECF No. 25).  Greg's Marine Excavation moved to dismiss Counts I, II, V, and VI, or in the alternative, for summary judgment on September 10, 2013 (ECF No. 27), and Plaintiffs opposed the motion on September 13, 2013 (ECF No. 28).

## II. Standard of Review

Matters outside the pleadings will be considered and Defendants' motions shall be treated as ones for summary judgment.  Summary judgment is governed by Fed.R.Civ.P. 56(a) which provides that: "[t]he court shall grant summary judgment

if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The United States Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion: "[b]y its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). "The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must set forth specific facts showing that there is a genuine issue for trial." *See Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (*quoting* former Fed.R.Civ.P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in [his] favor without weighing the evidence or assessing the witness' credibility." *See Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *See Bouchat*, 346 F.3d at 526 (internal

quotation marks omitted) (*quoting Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) and *citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

## III. Analysis

### A.    Dominion LP's Motion

### 1.    Negligence (Count IV)

Personal representative Gardner asserts a negligence claim against Dominion LP.  To prevail on a claim of negligence, a plaintiff must prove: "(1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of the duty." *Muthukumarana v. Montgomery Cnty.*, 370 Md. 447, 486 (2002) (*quoting BG & E v. Lane*, 338 Md. 34 (1995)).  If no duty is owed another, then no action can be sustained even though injury has occurred.  *Bauman v. Woodfield*, 244 Md. 207, 216 (1966).

Here, Dominion LP employed Greg's Marine Construction as an independent contractor to perform work on defective concrete pilings of jackets, including Piling No. 140, on which Mark Copeland - a Greg's Marine Construction employee - performed repair work at the time of his death.  It is a well-established principle that under Maryland law, "the employer of an independent contractor is not liable for the negligence of the

contractor or his employees," subject to multiple exceptions contained in the Restatement (Second) of Torts. *Rowley v. Mayor and City Council of Balt.*, 305 Md. 456, 461 (1986) (*citing* Restatement § 409); *Meltech Corp. v. Austin Mohawk & Co., Inc.*, Civil Action No. 11-cv-160-AW, 2013 WL 3353744, at *7 (D.Md. July 1, 2013). The complaint (and Plaintiffs' opposition) suggests liability predicated upon Dominion LP's own negligence pursuant to Restatement (Second) of Torts § 414.[3] Thus, the threshold question is whether Dominion LP owed a duty to Mark Copeland through the operation of Section 414 of the Restatement (Second) of Torts. *See Brady v. Ralph M. Parsons Co.*, 327 Md. 275, 283-84 (1992) (discussing Section 414 in analyzing duty owed to employees of subcontractors); *Wells v. Gen. Elec. Co.*, 807 F.Supp. 1202, 1206 (D.Md. 1992) (citing Maryland case-law adopting Restatement (Second) of Torts § 414).

**a. Retention of Control – Restatement (Second) of Torts Section 414**

Dominion LP argues that Gardner's negligence claim fails insofar as Gardner attempts to hold Dominion LP personally

---

[3] There are three broad categories of exceptions to the general non-liability rule: (1) negligence of the employer in selecting, instructing, or supervising the contractor; (2) non-delegable duties of the employer, arising out of some relation toward the public or the particular plaintiff; and (3) work which is specially, peculiarly, or "inherently" dangerous. *See Wells*, 807 F.Supp. at 1205. These exceptions are incorporated into Sections 410 through 429 of the Restatement (Second) of Torts. The facts here do not trigger these exceptions.

liable because Dominion LP did not retain and exercise control over the manner, method, and operative details of Greg's Marine Construction's work and thus it did not owe a duty of care to Mark Copeland, an employee of Greg's Marine Construction. (ECF No. 11-1, at 14). The complaint alleges that Dominion LP had a duty to warn of unsafe conditions at Dominion Cove Point LNG Terminal and that it failed to supervise the construction work and implement an adequate safety plan for the work being performed on its facility. (*See* ECF No. 1, at 23-24). These allegations trigger the application of Restatement (Second) of Torts § 414, which states the following:

> One who entrusts work to an independent contractor, but who retains control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

*Id.*; *Brady*, 327 Md. at 283-84. Comment c to Section 414 clarifies what is meant by "control":

> In order for the rule stated in this Section to apply, the employer must have retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is

> controlled as to his methods of work, or as
> to operative detail. There must be such a
> retention of a right of supervision that the
> contractor is not entirely free to do the
> work in his own way.

*Id.* Notably, the retention of control must exist "*in respect to the very thing from which the injury arose.*" *Gallagher's Estate v. Battle*, 209 Md. 592, 602 (1956) (emphasis in original), *cert. denied*, 352 U.S. 894 (1956); *Wells*, 807 F.Supp. at 1206.

There is nothing in the MSC 634 or the purchase order executed between Dominion LP and Greg's Marine Construction that evidences Dominion LP's retention of control over the concrete piling jackets that would give rise to liability under Section 414 of the Restatement (Second) of Torts.[4] (*See* ECF No. 11-2 ¶ 7, affidavit of Michael Frederick ("Pursuant to the Master Service Contract, while performing its work at the Cove Point Terminal, Greg's Marine [Construction] was to operate at all times as an independent contractor and to retain control over the operative details of its work.")). Gardner's reliance on sections of the MSC 634 and the purchase order to evidence Dominion LP's retention of control is misplaced. First, Gardner cites Section 7 of the MSC to show that Dominion LP retained control over the work:

---

[4] The purchase order between Greg's Marine Construction and Dominion LP incorporates by reference the MSC 634. (ECF No. 11-5, at 1).

> If requested by [Dominion LP], [Greg's
> Marine Construction] shall furnish [Dominion
> LP] with evidence of the qualifications,
> education and experience of its personnel.
> [Dominion LP] shall have the right to
> require the removal of any of [Greg's Marine
> Construction's] personnel from the Work, if
> in the sole judgment of [Dominion LP], such
> removal is in [Dominion LP's] best interest.
> Any of [Greg's Marine Construction's]
> personnel judged unsatisfactory by [Dominion
> LP] shall be reassigned and other qualified
> personnel assigned to the Work at no
> additional cost to [Dominion LP].

(ECF No. 11-3, at 7). Although this section gives Dominion LP the discretion to remove unqualified subcontractor personnel from performing the work, it does not evidence Defendant's control over the very thing from which the injury arose. Mr. Copeland's death resulted from "the concrete piling jacket on which Mr. Copeland was performing repair work bec[oming] detached from the piling and pull[ing] Mr. Copeland to the bottom of the Chesapeake Bay, approximately fifty (50) feet below the surface." (ECF No. 1 ¶ 26). Furthermore, when Mr. Copeland's coworkers or other employees attempted to rescue him, they dislodged his air hose and/or safety line. Thus, Gardner's reliance on this section to show that Dominion LP retained control over the very thing from which the injury arose is misplaced.

Gardner also cites Section 12.D of the MSA, which enabled Dominion Transmission, Inc. to suspend the work. Specifically, that section states:

> [Dominion LP] may, without cause, order [Greg's Marine Construction] in writing, to suspend performance of the Work, in whole or in part, for such period of time as [Dominion LP] may determine.

(*Id.* at 12). This provision suggests that at most, Dominion LP exerted a general degree of control over the work (*i.e.,* retaining the discretion to suspend the work wholly or partially), which in Maryland is insufficient to establish liability. *See, e.g., Meltech Corp.*, 2013 WL 3353744, at *9 ("The fact that Beechgrove had some general input on Robert White's work does not make it liable for its subcontractor's negligence."); *Rowley*, 305 Md. at 461 (holding that the City was not liable for negligence where it retained policy oversight only, including "the power to disapprove bookings of attractions and conventions it considered inappropriate."). Moreover, Comment c to Section 414 of the Restatement (Second) of Torts expressly provides that "[i]t is *not* enough that [the employer] has merely a general right to order the work stopped." (emphasis added); *see also Parker v. Neighborhood Theatres, Inc.*, 76 Md.App. 590, 600 (1988) (holding that defendant did not participate in the control and manner in which the construction took place where the contract permitted defendant to make

changes in the work within the scope of the specifications, to stop the work if it did not meet the requirements of the contract documents, and to make job site inspections).

Section 22.A of the MSC on which Gardner also relies similarly reflects that Dominion LP at most exercised general control over the execution of the contract with Greg's Marine Construction. Specifically, that section prohibited Greg's Marine Construction from assigning any rights or delegating its duties under the MSC without Dominion LP's permission. This section likewise does not evidence that Dominion LP controlled the operative details of the subcontractor's work, much less the very thing from which the injury arose. In fact, the complaint alleges that "[a]t all times relevant hereto, Mr. Copeland was performing the tasks and duties that he was instructed to perform by his *employer* [Greg's Marine Construction]." (ECF No. 1 ¶¶ 17, 23) (emphasis added).

Finally, Gardner argues in the opposition that Dominion LP was negligent because "Dominion LP's obligations under the MSA required coordination of the safety programs of Greg's Marine [Construction] and Dominion LP and/or Dominion Transmission, Inc." (ECF No. 19, at 6). Specifically, Gardner references Section 27 of the MSC, which required Greg's Marine Construction to implement and comply with Dominion Transmission, Inc.'s safety programs "for the performance of their respective

15

portions of the Work as are set forth in their respective subcontracts and adopt such other safety programs as [Greg's Marine Construction] deems necessary or appropriate." (ECF No. 11-3, at 20). Section 27 further stated that "[Greg's Marine Construction] shall coordinate its safety programs with those of [Dominion Transmission, Inc.]." (*Id.*). The coordination of safety programs, however, is manifestly different from Dominion LP's retention of *control* over repair work of the concrete piling jackets, which ultimately led to Mark Copeland's death. *See, e.g., Wells*, 807 F.Supp. at 1207 ("Montel did rely, to some degree, upon General Electric electricians in the completion of its project. . . . The provision of such assistance, however, is manifestly different from General Electric's retention of *control* over the electricity within the areas in which Montel employees were working, and control is the deciding criterion.") (emphasis in original). In fact, Dominion LP contracted with Greg's Marine Construction for the very purpose that Greg's Marine Construction's employees perform repair work on the defective concrete piling jackets, including Pile Number 140, which detached while Mr. Copeland was performing the repair work. (*See* ECF No. 11-4). The purchase order specifically tasked Greg's Marine Construction with the responsibility for the safety of its employees and associated Occupational Safety and Health Act ("OSHA") compliance. (ECF No. 11-5, at 2).

Moreover, Section 27 stated that "Supplier [*Greg's Marine Construction*] shall be responsible for providing its employees and suppliers working on the project site with all safety equipment, including without limitation, hardhats, protective eyewear, earplugs, respirators, work gloves and all other necessary protective and medical equipment." Indeed, in the complaint, Gardner asserts that at the time of the accident, "Greg's Marine" provided safety gear to Mark Copeland. (*See* ECF No. 1 ¶ 22).

Judge Blake's analysis in *Leppo v. Jacobs Facilities, Inc.*, Civil Action No. CCB-09-3415, 2010 WL 3085430 (D.Md. Aug. 6, 2010), is instructive. That case involved a lawsuit by an employee of a contractor against Jacobs Facilities, Inc. ("JFI"), the construction manager, for injuries plaintiff sustained on the job. As construction manager, "JFI was responsible for various managerial tasks, such as preventing construction delays, checking compliance with building codes and construction plans, and monitoring construction contractor compliance with established safety standards." *Id.* at *1 (internal quotations omitted). Specifically, JFI was to "note and report unsafe working conditions [and] failures to adhere to [the] safety plan required by construction requirement." *Id.* Much like the provision in the purchase order requiring "Dominion Transmission job site agents [] promptly [to] notify a

contractor supervisor of any observed noncompliance [with safety requirements]; and require prompt corrective action," (ECF No. 11-5, at 3), JFI's inspectors were required physically to inspect the worksite to monitor safety requirements and orally and in writing notify the construction contractor in the event they observed unsafe working conditions on the premises.[5]   In finding no duty and granting summary judgment for JFI, Judge Blake reasoned that "[a]lthough JFI monitored safety on the construction site, it lacked authority to compel [the general contractor] to take any safety precautions.  As specified in its GSA contract, JFI did not control the means and methods of construction and, therefore, may not be held liable for any harm resulting from [the general contractor's] alleged safety oversight."  *Id.* at *3; *Appiah v. Hall*, 183 Md.App. 606, 633 (2008) (holding that although the defendant had "[t]he ability to recommend or impose safety requirements," this did not mean that it retained "control over the very thing that caused the injury," as contemplated by § 414); *Wajer v. Balt. Gas & Elec. Co.*, 157 Md.App. 228, 244 (2004) (concluding that the defendant, despite conducting safety inspections and coordinating safety efforts on the construction site, lacked the necessary degree of

---

[5]   The purchase order stated that notifications of noncompliance will be documented.  The purchase order also included that "Dominion Transmission job site agents will immediately notify a contractor supervisor of any observed imminent danger."  (ECF No. 11-5, at 2).

control to trigger a duty of care to construction contractor employees under Section 414 because its inspector could only request that unsafe conditions be changed and could not control the "methods, techniques, or sequences of the work to be performed"). The same rationale applies to these facts. Indeed, Gardner asserts in the complaint that "Defendant, *Weeks*, controlled the method and manner of the construction and renovation work done on this project." (ECF No. 1 ¶ 49) (emphasis added). Furthermore, the MSC 634 provided that "*Supplier [Greg's Marine Construction]* shall furnish all labor, services, supervision, material, tools, supplies, machinery, vehicles and equipment necessary to *fully and completely perform the [w]ork* in accordance with the provisions of the [C]ontract, as well as any applicable Governmental Requirements." (ECF No. 11-3, at 1; *id.* at 21) (emphasis added); *Trosclair v. Bechtel Corp.*, 653 F.2d 162 (5th Cir. 1981) (holding that a prime contractor who required a subcontractor to implement detailed safety measures and inspect the worksite for compliance with safety programs was not liable for injuries suffered by the subcontractor's employees on the job); *Roberson v. United States*, 382 F.2d 714, 721 (9th Cir. 1967) ("The safety inspection activities of the [prime contractor] did not relieve the [subcontractor] of any of its contractual duties . . . [I]t was designed only to make sure that [subcontractor] performed those

duties."). Thus, Gardner's assertion in the opposition that "Dominion LP charged itself with the obligation to monitor safety" would not give rise to liability under Section 414. *See, e.g., Wells,* 807 F.Supp. at 1208 ("[t]his practical and pragmatic coordination of safety efforts did not give General Electric the necessary right of control over the details of Montel's salvage job which would predicate a § 414 duty owing to Mr. Wells.").[6]

### b. Non-delegable Duty to Provide a Safe Workplace

The allegations in the complaint also suggest that Gardner believes that Dominion LP breached a duty by failing to maintain a safe workplace at Cove Point Terminal.[7] Specifically, Gardner

---

[6] The court in *Wells* also noted that even if defendant retained sufficient control to invoke a duty to use reasonable care pursuant to Section 414, "employees of an independent contractor are not within the class of persons to whom the duty in this section might run." 807 F.Supp. at 1209; *Wilson v. Ford Motor Co.*, 656 F.2d 960 (4th Cir. 1981). *Wells* cited the discussion in *Rowley v. City of Baltimore* regarding the anomaly created by "providing greater protection to employees of an independent contractor than to the defendant's own employees and the effect of workers' compensation laws." *Wells*, 807 F.Supp. at 1208. Thus, courts in Maryland have reasoned that Section 414 of the Restatement (Second) of Torts was generally intended for the protection of persons *other than* the independent contractors and their employees. *Brady*, 327 Md. at 282-83.

[7] This duty, often referred to as the "safe workplace doctrine" when applied to a contractor's employees, is set forth in Restatement § 343 and is closely related to the duty of a landowner. *See Wells*, 807 F.Supp. at 1210 n.11; *Doali-Miller v. SuperValue Inc.*, Civil No. JFM-10-2422, 2011 WL 1935831 (D.Md. May 19, 2011) ("Maryland has adopted the general rule regarding

asserts that Defendant's duty included exercising reasonable care to protect business invitees such as Mark Copeland because he would not discover or realize the danger or fail to protect himself against it. (*See* ECF No. 1 ¶ 59). The analysis in *LeVonas v. Acme Paper Board Co.* is instructive on this point:

> If the owner employs an independent contractor to do certain work, he owes to employees of the contractor the same duty he would owe to employees of his own to furnish them a safe place to work. When the risk to which an employee is exposed arises from causes which are concealed, the employer is bound to notify him of them, provided that he himself knows them, or by the exercise of ordinary care ought to have known of them . . . [L]iability for injuries to a servant of an independent contractor rests upon the owner when the premises on which the stipulated work is done *remain under his control and the injuries arise out of the abnormally dangerous condition on the premises*, the owner being chargeable with knowledge of the danger.

184 Md. 16, 19-20 (1944) (emphasis added).

The record presents no disputed issue of material fact as to Dominion LP's fulfillment of its narrow duty to provide a safe workplace for Greg's Marine Construction employees. Any claim of liability predicated upon the "safe workplace" doctrine requires (1) Dominion LP's control over the premises, and (2) the presence of an "abnormally dangerous condition." *See Le Vonas*, 184 Md. at 20. Gardner asserts in the complaint that

---

the liability of possessors of land to invitees set forth in the Restatement (Second) of Torts § 343").

Dominion failed to warn "plaintiffs' decedent, a business invitee, of the peculiar, dangerous and unsafe conditions then and there existing upon the construction site premises." (ECF No. 1, at 24). But as the court observed in *Wells*, "[t]he predicate control necessary to find [defendant] liable under [the safe workplace] theory is analogous to that required under § 414." 807 F.Supp. at 1211. Here, there is no genuine issue of material fact that Dominion LP did not retain sufficient control to create liability under Section 414. Moreover, in *Cutlip v. Lucky Stores, Inc.*, 22 Md.App. 673, 683 (1974), the Maryland Court of Special Appeals cautioned against finding the very conditions of a contracting job – which is the case here – itself "abnormally dangerous":

> The "abnormally dangerous conditions on the premises" referred to in *Le Vonas* do not include conditions which arise after and as a result of the independent contract. The "conditions" are those latent dangers preexisting the contract's carrying over without the owner's taking precautions to guard against the conditions before he permits others to occupy the premises.

Dominion LP had a duty to notify Greg's Marine Construction employees of any latent or concealed dangers present at Cove Point Terminal. The danger that the concrete piling jacket would detach in the course of repair work was not either latent or concealed; therefore, Dominion LP owed no duty of notification. In fact, the danger Plaintiff cites is the very

work Greg's Marine Construction was contracted to perform. *See Wells*, 807 F.Supp. at 1211-12 ("[t]he very essence of Montel's contract was to strip out the electrical conduit and bussing within Building 1; thus, the condition of plaintiff Wells working around electrical wiring – which led to his injury – arose both after and as a result of that contract and could not be considered an 'abnormally dangerous condition' as defined by the *Le Vonas* court."). As noted in *Rowley*, "under the circumstances of this case the duty [to maintain the premises in a reasonably safe condition] did not extend to the independent contractor and its employees with respect to defects arising from the failure of the contractor to accomplish the very repairs it had undertaken to perform." *Rowley*, 305 Md. at 463. Similarly, Dominion LLP contracted Greg's Marine Construction specifically for the purpose of repairing eleven concrete piling jackets, including Pile Number 140. Thus, Dominion LP's position that "Greg's Marine [Construction] and its employees were on notice in advance of the start of the project about the 'damaged' condition of the then existing jackets" is persuasive. (ECF No. 11-1, at 27).

### 2. Wrongful Death (Count V) and Survival Action (Count VI)

As noted above in footnote 2, there is no separate cause of action known as a "survival claim." Rather, a survival action

is brought by the personal representative asserting a claim that could have been brought by the decedent, had he survived. Thus, Count VI is not a cause of action and will be dismissed against all of the named Defendants.

The wrongful death claim in Count V, however, is a separate cause of action, but it cannot be maintained if, as Dominion LP argues, negligence cannot be shown. A wrongful death action is brought by the relatives of the decedent, seeking recovery for their loss as a result of the victim's death.

> In addition, if the deceased victim left a parent, spouse, or child (or, in the absence of such a person, any other person related to the victim by blood or marriage and who was substantially dependent on the victim), that person may sue, on his or her own behalf, for certain losses the person suffered by reason of the wrongful death of the victim. *See* Md.Code, §§ 3-901 to 3-904 of the Courts and Judicial Proceedings Article. That is the "wrongful death" or "Lord Campbell's" action. As presently codified, it permits the defined class of persons to maintain an action against a person whose "wrongful act" causes the death of another. The term "wrongful act" is defined to mean "an act, neglect, or default ... which would have entitled the party injured to maintain an action and recover damages if death had not ensued." *Id*. § 3-901(e).

*Smith v. Borello*, 370 Md. 227, 233 (2002).

Here, any wrongful death claim against Dominion LP would be premised on the alleged negligence of Dominion LP. As discussed *supra*, Dominion LP cannot be held liable on the theory of

negligence. Accordingly, the wrongful death claim against Dominion LP also cannot lie.

### 3. Plaintiffs' Rule 56(d) Request

In an attempt to avoid summary judgment, Plaintiffs spend most of the opposition arguing that summary judgment is premature because "no discovery has been conducted and no documents have been exchanged other than those that Dominion LP electively attached to the instant Motion." (ECF No. 19, at 7).[8] Defendant counters that "Plaintiffs have failed to identify the specific issues of material fact *as to Dominion LP* that are likely to be uncovered or disclosed if such discovery is permitted." (ECF No. 23, at 15) (emphasis in original).

Ordinarily, summary judgment is inappropriate if "the parties have not had an opportunity for reasonable discovery." *E.I. duPont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011). Rule 56(d) allows the court to deny a motion for summary judgment or delay ruling on the motion until discovery has occurred if the "nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Notably, requests under Rule 56(d) "'cannot simply demand discovery for the sake of

---

[8] In an apparent procedural oversight, Plaintiffs reference Rule 56(f) instead of Rule 56(d). The 2009 Amendments to the Federal Rules of Civil Procedure transferred the language of former Rule 56(f) to Rule 56(d).

discovery.'" *Hamilton v. Mayor & City Council of Balt.*, 807 F.Supp.2d 331, 342 (D.Md. 2011) (*quoting Young v. UPS*, No. DKC-08-2586, 2011 WL 665321, at *20 (D.Md. Feb. 14, 2011)).  Courts interpreting Rule 56(d) have consistently held that a nonmovant's request may be denied if "the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Ingle ex rel. Estate of Ingle v. Yelton*, 439 F.3d 191, 195 (4th Cir. 2006) (internal quotation marks omitted).  Put simply, Rule 56(d) does not authorize "fishing expedition[s]."  *Morrow v. Farrell*, 187 F.Supp.2d 548, 551 (D.Md. 2002), *aff'd,* 50 F.App'x. 179 (4th Cir. 2002).

Plaintiffs posit that they have not had an opportunity to conduct discovery "necessary to respond to the factual disputes raised" in the motion.  (ECF No. 19, at 11).  They submit an affidavit from Plaintiff's counsel, which seeks several forms of discovery: (1) depositions of Corporate Designees of Dominion Resources, Inc., Dominion Cove Point LNG, LP, Dominion Cove Point LNG Company, LLC, Weeks Marine, Inc., Greg's Marine Construction, Inc., and Greg's Marine Excavation, Inc.; (2) Contracts executed between all defendants to this cause of action, which includes all modifications and appendices; (3) all job hazard analyses and/or job safety analyses conducted in connection with the renovation, demolition, reconstruction,

restoration and construction work being performed at the Dominion Cove Point LNG Terminal on October 23, 2010 and prior to that date; (4) all safety manuals generated or used in connection with the work being performed at the Dominion Cove Point LNG Terminal; (5) all minutes of meetings in connection with the construction project; (6) depositions of workers on-site at the time of Mark Copeland's death; (7) construction drawings, technical drawings, architectural drawings and/or other documents utilized to plan and carry out the construction work being performed at the Dominion Cove Point LNG Terminal; (8) information pertaining to the commercial diving training required by Dominion LP, *et al.*, for workers at the Dominion Cove Point LNG Terminal; (9) Mark Copeland's personnel file; (10) Mark Copeland's safety training, commercial driving training, and/or other training history; and (11) expert review of documents, records, and other information obtained through discovery. (ECF No. 19, at 14-17). Although the affidavit indicates that the above information "will materially affect the outcome of this case and create genuine issues of material fact sufficient to defeat summary judgment," Plaintiffs do not demonstrate that the areas of discovery they identify would create a genuine issue of material fact regarding Dominion LP's duty to the employees of its contractor, Greg's Marine Construction, essential to establish negligence. *See, e.g.,*

*Betos v. Suburban Hosp., Inc.*, Civil Action No. DKC-11-1452, 2012 WL 2564781, at *9 (D.Md. June 29, 2012) ("the crux of Mr. Betof's argument is that he should be allowed to find out if [he] has a claim, rather than that [he] has a claim for which [he] needs . . . discovery" (internal citations omitted)).[9] Plaintiffs thus cannot sustain their case by invoking the protections of Rule 56(d).

## B. Dominion LLC's and Dominion Inc.'s Motion

The negligence and wrongful death claims are also asserted against Dominion LLC and Dominion Inc. In moving to dismiss or for summary judgment, these two Defendants argue that contrary to the allegations in the complaint, only Dominion LP operates and controls the Cove Point Terminal. Specifically, Defendants explain that Dominion, LLC is a one percent passive shareholder in Dominion LP and that Dominion Inc. is the remote parent company of Dominion LLC. (ECF No. 12-1, at 2). Defendants contend that neither played any role in the operation of Cove Point Terminal. Defendants submit an affidavit from Sharon L. Burr, the Assistant Corporate Secretary for Dominion Inc. and Assistant Secretary for Dominion LLC, attesting that Dominion LP

---

[9] Notably, Dominion LP asserts in the reply brief that "Dominion LP does not even have any of the documents that Plaintiffs claim they need from Dominion LP in discovery in order to oppose a motion for summary judgment." (ECF No. 23, at 16). Dominion LP includes an affidavit from Mark Reaser, Director of LNG Operations for the Dominion Cove Point LNG Terminal, attesting to this point. (*See* ECF No. 23-2).

is the sole owner and operator of Cove Point Terminal and that no employees of either Dominion Inc. or Dominion LLC work at the Cove Point Terminal. (*See* ECF No. 12-2). Defendants further state that Dominion Inc. acts as a holding company for affiliated companies, "and played no role in the day to day operations of the Cove Point Terminal beyond funding and general administrative services." (ECF No. 12-1, at 8).

Plaintiffs' negligence and wrongful death claims against Dominion LLC and Dominion Inc. suffer from the same infirmity as those asserted against Dominion LP. Plaintiffs maintain that "based on the contracts attached to Defendant Dominion Cove Point LNG, LP's Motion to Dismiss or, in the alternative, Motion for Summary Judgment, the various Dominion entities operated interchangeably." (ECF No. 18, at 7). The record does not support Plaintiffs' position as it clearly reflects that Greg's Marine Construction contracted with Dominion LP to perform repair work on eleven concrete piling jackets and incorporated by reference the MSC 634. Furthermore, Plaintiffs overlook the principle that "[a] contractual obligation, by itself, does not create a tort duty. Instead, the duty giving rise to a tort action must have some independent basis." *Mesmer v. Md. Auto. Ins. Fund*, 353 Md. 241, 253 (1999). In the absence of a duty of care, there can be no liability in negligence. *Walter, Smullian & Blumenthal, P.A. v. Katz, et al.*, 361 Md. 645, 655 (2000).

Here, Plaintiffs cannot establish that Dominion LLC and Dominion Inc. owed a duty of care to Mark Copeland, an employee of Greg's Marine Construction, and thus cannot show negligence. Indeed, given the corporate structure, Dominion LLC and Dominion Inc. are even further removed from employees of Greg's Marine Construction, which contracted with Dominion LP to perform repair work at Cove Point Terminal.[10] In the opposition, Plaintiffs make a Rule 56(d) request, seeking the same documents as described *supra*. But here too, Plaintiffs fail to show how the documents they seek will create a genuine issue of material fact as to Dominion LLC's and Dominion Inc.'s liability for negligence. Accordingly, summary judgment will be granted as to Dominion Inc. and Dominion LLC and Plaintiffs' Rule 56(d) request will be denied.

### C. Weeks Marine's Motion

The complaint also includes negligence and wrongful death claims against Weeks Marine. (ECF No. 1, at 17). The complaint alleges that Weeks Marine contracted "Greg's Marine" to replace deteriorated concrete jackets on pilings owned by Dominion LP.

_____

[10] Defendants also correctly state that a corporate parent cannot be held liable for subsidiary's wrongful acts solely by virtue of its ownership of and control over subsidiary, unless the corporate veil can be pierced under conventional doctrines because of inadequate capitalization of subsidiary, gross disregard of corporate formalities, and the like. *In re Am. Honda Motor Co., Inc. Dealerships Relations Litig.*, 958 F.Supp. 1045, 1051 (D.Md. 1997).

(ECF No. 1 ¶ 14). But the record reflects that Greg's Marine Construction in fact contracted with *Dominion LP* to perform repair work on the concrete jackets and Weeks Marine entered into a *separate* contract with Dominion LP, dated October 28, 2009, for mooring and breasting dolphin repair work at the South and North Off-Shore Berths at Cove Point Terminal. (*See* ECF No. 13-4 & ECF No. 13-3 ¶ 4 (affidavit of Robert Gianna)). Like the Plaintiffs, Weeks Marine refers to Greg's Marine Construction and Greg's Marine Excavation collectively as "Greg's Marine" in its motion and the supporting affidavits. (See ECF No. 13-1, at 2). Weeks Marine contends that Weeks Marine and "Greg's Marine" are two unrelated and independent contractors of Dominion LP and "the only nexus between the two is that they happened to be working at the same general work-site at the same time." (ECF No. 13-1, at 9-10).

In support of its position, Weeks Marine includes an affidavit from Robert Gianna, Project Engineer for Weeks Marine, in which he attests that "[a]t no time at issue in the Complaint w[ere] Greg's Marine [Construction and Greg's Marine Excavation] [] subcontractor[s] or independent contractor[s] of Weeks Marine, and Greg's Marine [Construction and Greg's Marine Excavation] performed no work for Weeks Marine in connection with the aforesaid October 28, 2009 contract between Dominion LP

31

and Weeks Marine." (ECF No. 13-3 ¶ 9).[11] He also avers that the October 28, 2009 contract between Dominion LP and Weeks Marine required Weeks Marine to inspect and supervise the work of its *own* subcontractors and employees. (*Id.* ¶ 17). Mr. Gianna further attests that Weeks Marine used two small time-chartered workboats to transport Weeks Marine's employees to and from the offshore Cove Point Terminal; on the day of Mark Copeland's death "although Weeks Marine was working at the opposite berth, Dominion LP's security personnel asked Weeks Marine if it could bring one of the workboats to the South Berth to transport Mark Copeland's body from the South Berth area to a waiting ambulance on the shore." (*Id.* ¶ 25). Weeks Marine states that this was its only connection to the incident at issue.

Weeks Marine's position is persuasive. Plaintiff cannot demonstrate that as an independent contractor to Dominion LP, Weeks Marine owed a duty to employees of Greg's Marine Construction, another independent contractor of Dominion LP. The fact that Weeks Marine was also performing repair work at Cove Point Terminal does not create a duty of care by Weeks Marine to employees of another independent contractor. As Weeks Marine posits, "the only indirect facts linking Weeks Marine and

_____

[11] Weeks Marine submits as an exhibit the "Subcontractor Invoice Summary," which also does *not* identify Greg's Marine Construction or Greg's Marine Excavation as subcontractors. (ECF No. 13-6).

Greg's Marine [Construction] is that both were performing work at the Cove Point Terminal at the same time, albeit at different berths, and, that, after Mark Copeland's body was pulled from Chesapeake Bay, at the request of Dominion LP, Weeks Marine's time chartered vessel, GO BETWEEN, transported Mark Copeland to the shore so that waiting emergency medical personnel could attend to him." (ECF No. 13-1, at 11).[12]   Although Plaintiffs again make the same Rule 56(d) request with respect to Weeks Marine's motion, they fail to specify how any of the documents they seek (the same documents discussed *supra*) will create a genuine issue of material fact as to Weeks Marine's duty to Mark Copeland.   Accordingly, this request will be denied.[13]

To the extent Plaintiffs attempt to hold Weeks Marine liable for negligence in violating applicable OSHA regulations (see ECF No. 1, at 21), this argument is also unavailing. First, Weeks Marine submits the Citation and Notification of Penalty (dated December 15, 2010) that OSHA issued against *Greg's Marine Construction*, not Weeks Marine.   (*See* ECF No. 13-

---

[12]   Weeks Marine submits an affidavit from Thomas Langan, Corporate Risk manager with Weeks Marine, attesting that the two workboats chartered by Weeks Marine – OUTLAW and GO BETWEEN – were not owned by Weeks Marine, but remained under the control of the Captains hired by the vessels' owners.   (ECF No. 13-2 ¶ 6).

[13]   As Weeks Marine notes in the reply, the materials Plaintiffs seek in discovery "are wholly outside the scope of Weeks Marine's knowledge and control, as they were not involved with the piling jacket repair work."   (ECF No. 24, at 10).

9).  Moreover, "OSHA does not independently establish tort duties between a contractor and employees of other contractors or subcontractors.  The Act explicitly states that it shall not be construed to supersede or affect any workmen's compensation law or to enlarge or diminish the common law or statutory rights, duties, or liabilities of employers with respect to injuries to their employees."  *Jones,* 2004 WL 1254029, at *5. The Fourth Circuit has stated, "'[i]n a negligence action, regulations promulgated under . . . [OSHA] provide evidence of the standard of care exacted of employers, but they neither create an implied cause of action nor establish negligence per se.'"  *Albrecht v. Balt. & Ohio R. Co.*, 808 F.2d 329, 332 (4th Cir. 1987) (*quoting Melerine v. Avondale Shipyards, Inc.*, 659 F.2d 706 (5th Cir. 1981)); *Ellis v. Chase Commc'ns, Inc.*, 63 F.3d 473, 478 (6th Cir. 1995) ("even if an OSHA violation is evidence of [defendant's] negligence . . . [defendant] must owe a duty to [plaintiff] under a theory of liability independent of OSHA, as OSHA does not create a private right of action.  OSHA regulations can never provide a basis for liability").

Because Plaintiffs cannot establish that Weeks Marine owed any duty to Mark Copeland as an employee of another independent contractor of Dominion LP, summary judgment is also appropriate as to the negligence and  wrongful death claims against Weeks Marine.

34

**D.  Greg's Marine Excavation's Motion**

Personal representative Gardner alleges that Greg's Marine Excavation violated the Jones Act, 46 U.S.C. § 30104, and the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 903. Robert Wayne Copeland asserts a wrongful death claim against this Defendant.

Greg's Marine Excavation argues that it is an improper defendant because it has "no connection to this matter other than the fact that Defendant Greg's Marine Excavation, Inc. owned the barge that provided transportation on the date of the accident and Gregory Burkhardt is the president of both Defendant Greg's Marine Construction, Inc. and Defendant Greg's Marine Excavation, Inc."  (ECF No. 27-1, at 2).  Specifically, Greg's Marine Excavation contends that "Mark Copeland was never employed by Defendant Greg's Marine Excavation, Inc. at any point, but was only [an employee of] Defendant Greg's Marine Construction, Inc." (*Id.*).  Greg's Marine Excavation submits an affidavit from Gregory Burkhardt averring that over the years, Dominion LP hired Greg's Marine Construction to perform work at the Cove Point Terminal, and that in October 2009, "*Greg's Marine Construction* submitted a proposal for work to be completed on the off-shore pier of the Cove Point Terminal pertaining to the removal and installation of concrete piling jackets." (*Id.* at 5) (emphasis added).

Defendant's position is persuasive. To prevail on a Jones Act claim, a seaman must establish: (1) personal injury in the course of his employment; (2) negligence by his employer or an officer, agent, or employee of the employer; and (3) that the employer's negligence was a cause "in whole or in part" of his injury. *Hernandez v. Trawler Miss Vertie Mae, Inc.*, 187 F.3d 432, 436 (4th Cir. 1999). Notably, Jones Act actions may be maintained *only* against a seaman's employer, and a plaintiff may maintain a Jones Act claim against only one employer. *See Mitola v. Johns Hopkins Univ. Applied Physics Lab.*, 839 F.Supp. 351, 354-55 (D.Md. 1993) ("[A] 'seaman' is entitled to sue his employer, and only the single entity determined to be his employer, for negligence pursuant to the Jones Act." (*citing Cosmopolitan Shipping Co. v. McAllister*, 337 U.S. 783, 791 (1949)). The Longshore and Harbor Workers' Compensation Act authorizes compensation to workers who are injured or die in the course of their employment. Section 903(a) of the Longshore and Harbor Workers' Compensation Act limits coverage to injuries:

> occurring upon the navigable waters of the United States (including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area *customarily used by an employer* in loading, unloading, repairing, dismantling, or building a vessel.

33 U.S.C. § 903(a) (emphasis added). Section 905(b) allows third party actions against a vessel for injuries to a person caused by the negligence of a vessel. 33 U.S.C. § 905(b).

Here, Mark Copeland was a laborer with Greg's Marine Construction, *not* Greg's Marine Excavation. Furthermore, Plaintiffs have not established negligence for the reasons stated *supra*. Plaintiffs assert in the opposition that "[t]he barge that transported Mr. Copeland to the jobsite and from which the *Greg's [Marine] Construction employees* worked was owned and controlled by moving defendant, Greg's Marine Excavation, Inc. . . . the sister company of Greg's [Marine] Construction." (ECF No. 28-1, at 1-2) (emphasis added).[14] But this does not give rise to liability under the Jones Act and the Longshore and Harbor Workers' Compensation Act. Accordingly, these claims against Greg's Marine Excavation will be

_____

[14] Plaintiffs argue in the opposition that Greg's Marine Excavation's motion is premature as there has been no discovery "necessary to ascertain the relationship between Greg's [Marine] Construction and Greg's Marine [Excavation] and the various roles each played and/or shared on this particular project." (ECF No. 28-1, at 2). Plaintiffs have provided no affidavit or declaration, however, in connection with their opposition to this Defendant's motion. Thus, to the extent Plaintiffs request discovery or a denial of the motion for summary judgment pursuant to Rule 56(d), this request will be denied. *See Y.B. v. Board of Educ. of Prince George's County*, 895 F.Supp.2d 689, 702 (D.Md. 2012) ("Plaintiffs' Rule 56(d) request fails at the first step because it contains no affidavit in support of their demand for discovery.").

dismissed.[15]    Because Plaintiffs cannot establish Greg's Marine

Excavation's liability, the wrongful death claim will also be

dismissed.

## IV. Conclusion

For the foregoing reasons, the motions to dismiss, or in

the alternative, for summary judgment filed by Defendants

Dominion LP, Dominion Inc., Dominion LLC, Weeks Marine, and

Greg's Marine Excavation will be granted.    A separate order will

follow.

/s/
_____
DEBORAH K. CHASANOW
United States District Judge

---

[15]    Plaintiffs also argue that Greg's Marine Excavation's motion should not be considered because it is untimely, as it was filed eighty-two (82) days after Plaintiff served the complaint on Greg's Marine Excavation on June 20, 2013. According to Plaintiffs, they consented to a thirty-day extension for Greg's Marine Excavation to respond to the complaint, but Greg's Marine Excavation did not move for dismissal until September 10, 2013, another thirty days later. The record does not contain any return of service on this Defendant, nor reflect any extensions of time sought by Greg's Marine Excavation.    Weighing the underlying merits of Plaintiffs' claims against Greg's Marine Excavation and the time, expense, and effort to Plaintiffs of proceeding with their claims against Greg's Marine Excavation, it is appropriate to grant Defendant's summary judgment motion. *See, e.g., Brumback v. Callas Contractors, Inc.*, 913 F.Supp. 929, 934 (D.Md. 1995) (granting summary judgment motion that was untimely filed in the interest of judicial economy); *Bland v. Norfolk and Southern R.R. Co.*, 406 F.2d 863, 866 (4th Cir. 1969) ("Summary judgment is to avoid a useless trial.").